MOTORIST MUTUAL INSURANCE COMPANY, APPELLEE, v. COOK, APPELLANT.

[Cite as Motorist Mut. Ins. Co. v. Cook (1971), 31 Ohio App. 2d 1.]

(No. 11602—Decided August 23, 1971.)

*Messrs. McIntosh & McIntosh,* for appellee.
*Messrs. Roeller & Panos,* for appellant.

HESS, P. J. This is an appeal from the Hamilton County Municipal Court.

The record discloses that the plaintiff, Motorist Mutual Insurance Company, filed its petition in subrogation

against Pinkie Mae Cook on September 10, 1969, in which it alleged that on February 14, 1968, Joseph Jacobs was walking north across Clark Street, Hamilton County, Ohio, in a crosswalk at the intersection of Clark and Linn Streets, and that before plaintiff's insured reached the north side of Clark Street the defendant, Pinkie Mae Cook, who was driving a Chevrolet automobile in a southerly direction on Linn Street, negligently made a left-hand turn from Linn Street into Clark Street and struck the plaintiff's insured with great force, throwing him several feet, and causing him injuries as follows: intra-stricular hemorrhage and cartilaginous injury to the left knee.

Plaintiff further alleged that it is an insurance company authorized to write policies of collision insurance in the state of Ohio and that it had in effect a policy of insurance with an "uninsured motorist" clause, whereby it agreed to compensate the aforementioned insured of plaintiff for a loss sustained as a result of personal injury due to a collision with an uninsured motorist.

The plaintiff further alleged that, as a direct and proximate result of the said negligence and collision, it paid to Joseph Jacobs $1,560.08, and secured from him a trust agreement whereby it received an assignment to any and all rights of the said Joseph Jacobs to the extent of the amount so paid.

After a default judgment in favor of the defendant had been set aside, the defendant, Cook, filed an answer alleging negligence on behalf of plaintiff's insured and denied any negligence on her behalf.

On February 10, 1971, the case came on for a jury trial. The record discloses that just prior to the calling of a jury, defense counsel asked counsel for plaintiff to furnish him with copies of all documents he intended to introduce in support of the petition filed by Motorist Mutual Insurance Company, generally hereinafter referred to as Insurance Company. Counsel for plaintiff presented a document entitled "Receipt and Release of Trust Agreement." This document reads as follows:

"Received of the Motorist Mutual Insurance Company the sum of fifteen hundred sixty 08/100 ($1560.08)

dollars, being in full settlement of all claims and demands for loss and damage arising from an accident occurring near Cincinnati, Ohio on or about the 14th day of February, 1968, under a contract of insurance designated as Protection Against Uninsured Motorist, Policy No. 1,751C108-05, issued by the said Company.

"In consideration of the payment of said sum, the undersigned hereby releases the Motorist Mutual Insurance Company from any and all further liability under said Protection Against Uninsured Motorist coverage arising out of the said accident. And, further in consideration of such payment, the undersigned agrees to take, through any representative designated by the said Company, such action as may be necessary or appropriate to recover the damages suffered by the undersigned from any person or organization who may be legally liable therefor, and to hold any money recovered from such person or organization in trust for the benefit of the Motorist Mutual Insurance Company to be paid to the Company immediately upon recovery thereof; provided, however, that any sum recovered in excess of the amount paid to the undersigned under this agreement, shall be retained by the undersigned.

"The undersigned covenants that he/they have not released or discharged any claims or demands arising out of the above accident and that he/they will assist and cooperate with the representative designated by the Company to recover damages suffered by the undersigned. (Signed) Joseph G. Jacobs."

When plaintiff's counsel presented the "Receipt and Release of Trust Agreement," herein referred to as Exhibit No. 1, to counsel for defendant he stated to the court that was all he needed to introduce to show the defendant owed Insurance Company. The defendant questioned this conclusion. Thereupon, counsel for plaintiff requested and was granted a conference in the judge's chambers. After or during the conference the court advised counsel for plaintiff that Exhibit No. 1 would not be permitted in evidence, "because it did not give Motorist Mutual any rights against the defendant."

4

The bill of exceptions records the following.

"Plaintiff's counsel presented an oral motion in the interest of justice to allow Joseph Jacobs to be substituted as party plaintiff and delete the Insurance Company. The court granted this motion and recorded the following entry:

"Upon oral motion made, by plaintiff, Joseph Jacobs is hereby substituted as a party plaintiff in the place of Insurance Company, and paragraphs two and three of the complaint are hereby deleted from the complaint. The within cause is hereby to be prosecuted from this point forward in the name of Joseph Jacobs as plaintiff solely. To all of which defendant excepts."

This entry left the complaint or petition to read as follows:

"Comes now the plaintiff herein, and for its cause of action states that on the 14th day of February, 1968, at approximately 8:20 a. m. Joseph Jacobs was walking north across Clark Street, Hamilton County, Ohio, in a crosswalk, at the intersection of Clark and Linn, and that before plaintiff reached the north side of Clark Street, defendant, Pinkie Mae Cook, who was driving a 1965 Chevrolet automobile in a southerly direction on Linn Street, negligently made a left-hand turn from Linn Street into Clark Street and struck plaintiff with great force, throwing him several feet, and causing him injuries as follows: intra-stricular hemorrhage and cartilaginous injury to the left knee. Wherefore, plaintiff, Joseph Jacobs, prays for judgment in the amount of $1,560.08, together with costs herein."

The transcript discloses that an answer was filed by defendant to the petition of the Insurance Company filed on November 25, 1969. In its answer, defendant presented a general denial and an affirmative allegation alleging that any injuries sustained by plaintiff's insured, Joseph Jacobs were directly and proximately caused by the negligence of the plaintiff's insured. On December 13, 1969, plaintiff filed a reply to that answer of defendant in which it presented a general denial to the affirmative allegations contained in the defendant's answer. The transcript fails to show an answer to the petition after the substitution of

Joseph Jacobs for the plaintiff, Insurance Company, and the deletions referred to had been made.

Finally, on February 10, 1971, counsel for defendant advised the court he "would voir dire the jury on the relationship, their relationship with the Insurance Company on related questions." Following another meeting in chambers with the court, counsel for defendant was instructed by the court that he was forbidden to question the jury concerning the Insurance Company, and counsel advised the court he would proffer his request in the record.

On February 10, 1971, the jury was chosen and, when the clerk delivered the oath to the jury, he stated the case was styled Motorist Mutual Insurance Company versus Pinkie Mae Cook. Thereupon, the court "instructed the jury this was incorrect, and that it is Joseph Jacobs versus Pinkie Mae Cook."

On February 11, 1971, before any evidence was presented, counsel for defendant made a motion to dismiss Joseph Jacobs as a party-plaintiff for the reason that he failed to bring any action whatsoever within the statutory period of two years from the date of his alleged injuries; second, that he had waived his right to bring a tort action against the plaintiff; third, that he was improperly made a plaintiff at the request of the counsel for the Insurance Company, who had no prior written authority to do so; and fourth, that he was now listed as the sole plaintiff and had not posted any security for court costs.

This motion was overruled by the court, the cause proceeded to trial, a verdict for the sum of $1,560.08 for plaintiff was had, a motion for a new trial was overruled, and judgment was entered on the verdict.

It is from this state of the record that this appeal is taken.

Counsel for the defendant presents ten assignments of error which we will consider in the order of their listing.

Assignment of error No. 1: "The trial court erred in granting Insurance Company's motion to delete paragraphs two and three and to substitute Jacobs for itself and withdraw from the case, all of which was prejudicial."

It will be observed that after the deletions from the

6

Insurance Company's petition had been ordered by the trial court, all that remained was a claim for damages emanating from the alleged negligence of the defendant. There is no allegation in the petition that the defendant had been designated as a representative of the Insurance Company to recover the money paid by it to Joseph Jacobs in full settlement of Joseph Jacobs' claim for damages. The prayer of the petition is for damages due Joseph Jacobs in the exact sum he had received from the Insurance Company.

Apparently, the trial court substituted Joseph Jacobs as plaintiff pursuant to Rule 25(C), Ohio Civil Rules, which provides:

"In case of any transfer of interest, the action may be continued by or against the original party unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision A of this rule."

After the Insurance Company paid Joseph Jacobs the full amount of his claim for damages against Pinkie Mae Cook, he had no further interest in the matter. The purported interest transferred in by the substitution of Joseph Jacobs for the Insurance Company, as plaintiff, was not the interest of Joseph Jacobs but that of the Insurance Company.

There can be no question that after the substitution of Joseph Jacobs for the Insurance Company on February 10, 1971, he proceeded to trial on a tort action which occurred in February, 1968. There had been no service of summons on the defendant. R. C. 2305.10, provides that "an action for bodily injury or injuring personal property shall be brought within two years after the cause of action arose." The cause of action in the instant case arose more than two years after the injury set forth in the petition. We conclude the trial court could not evade this statute of limitations by substituting Joseph Jacobs as plaintiff in place of the Insurance Company more than two years after Joseph Jacobs' cause of action arose, and the motion of the defendant to dismiss this action after the substitution had been ordered should have been sustained.

Assignment of error No. 2: "The court erred in overruling Cook's motion to dismiss after Jacobs was substituted for Insurance Company."

This assignment is fully covered in our decision on assigned error No. 1.

Assignment of error No. 3: "The trial court committed error in limiting Cook's counsel on voir dire examination of the jury."

The prayer of the petition upon which the plaintiff went to trial after the court ordered him substituted for the Insurance Company was in the exact amount sought by the Insurance Company and it must be concluded that Joseph Jacobs was in fact acting as the "representative" of the Insurance Company. Under these conditions, he should have been privileged to ascertain from the prospective jurors whether they had any interest in the Insurance Company. The trial court was in error in denying the defendant the right to question the jurors on this subject on voir dire.

Assignment of error No. 4: "The court erred in failing to declare a mistrial after the clerk swore in the jury using the style of the case as 'Motorist' Mutual Insurance Company' versus Pinkie Mae Cook, all of which was prejudicial."

This was the only reference to the Insurance Company before the jury in the entire trial. Such reference was prejudicial to the defendant and a mistrial should have been granted. The statement of the court that Joseph Jacobs was the plaintiff did not correct the error.

Assignment of error No. 5: "The court erred in failing to grant Cook's motion for a directed verdict."

This assignment of error is covered in our discussion of assigned error No. 1.

Having determined that the two years statute of limitations prevented the plaintiff from recovery, it follows this assignment of error is valid and the motion for a directed verdict in favor of the defendant should have been sustained.

Assignment of error No. 6: "The trial court erron-

**8**

eously excluded defendant's witnesses' testimony as to spontaneous utterances made by Cook.''

The exclusion of the defendant's statement was error. What the defendant said at the time of the accident was admissible.

Assignment of error No. 7: ''The court erred in its instruction to the jury on the issue of pain and suffering.''

The general charge of the court on the question of pain and suffering is limited and a consideration of the charge in its entirety does not appear to be prejudicial to the defendant.

Assignment of error No. 8: ''The trial court erred in refusing to include defendant Cook's requested instruction to the jury.''

Counsel for defendant has failed to designate which portion of the special charge he objected to. He refers to contributory negligence, medical treatment and the necessity and cost of medical care. The special charge fails to include the word ''proximate'' in referring to causation and is erroneous. It should not have been given.

Assignment of error No. 9: ''The court failed to instruct the jury that it was not permitted to consider amounts of indebtedness claimed by the plaintiff for medical bills without: (A) testimony as to the necessity of the services; and (B) the reasonableness of the fees.''

A review of the evidence leads to the conclusion that the court committed prejudicial error in failing to charge the jury as on this assignment of error.

In keeping with the reasons presented herein, the judgment of the trial court is reversed and final judgment will be entered in favor of the defendant.

*Judgment reversed.*

Young and Shannon, JJ., concur.